## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**PAMELA MURRELL, Individually and as
Personal Representative on Behalf of the
Wrongful Death Beneficiaries of THE ESTATE
OF RAYMOND LEE MURRELL**                                       **PLAINTIFF**

**v.**                                          CIVIL ACTION NO. 3:24-cv-314-DPJ-ASH

**LILLIAN TUCKER, RODNEY JONES,
STACI AKINS, ARTHUR AUSLANDER,
and JOHN AND JANE DOES 1-100,
All In their Individual Capacities**                           **DEFENDANTS**

### PLAINTIFF'S ORIGINAL COMPLAINT

*Jury Trial Demanded*

This Complaint is brought by Pamela Murrell (hereinafter, "Plaintiff"), Individually and as Personal Representative on Behalf of the Wrongful Death Beneficiaries of the Estate of Raymond Lee Murrell, (hereinafter, "Decedent"), by and through undersigned counsel, against Neshoba County Detention Center Officers Staci Akins, Lillian Tucker, Rodney Jones, Arthur Auslander, and John and Jane Does 1-100, each in their individual capacities.

### JURISDICTION AND VENUE

2.      Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. § 1983 as well as the 8th and 14th Amendments to the United States Constitution.

3.      Venue is appropriate in this Court under § 1391(b), as all acts and/or omissions occurred in Neshoba County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

### PARTIES

4.      The Plaintiff, Pamela Murrell, is an adult resident citizen of Union County,

Mississippi. Her current residence is 75 Gibson Road, Union, Mississippi 39365. The Plaintiff, as the Decedent's surviving spouse, brings this action individually and on behalf of the surviving heirs and wrongful death beneficiaries of the Estate of Raymond Lee Murrell.[1]

5.    Raymond Lee Murrell ("Decedent") was, at all times material to this Complaint, an adult incarcerated at the Neshoba County Detention Center (hereinafter, "NCDC"), located in Philadelphia, Neshoba County, Mississippi. Substantial acts, omissions, and events which caused the Decedent's death took place in Neshoba County, Mississippi. At the time of the incident which gives rise to this Complaint, the Decedent was a 50-year-old citizen of the State of Mississippi and a pre-trial detainee incarcerated at the NCDC. The Plaintiff, as Personal Representative, brings this action pursuant to Mississippi Code Ann. § 11-7-13 (1972), the Wrongful Death Statute, and Mississippi Code Ann. § 91-7-233 (1972), the Survival Statute.

6.    Defendant Staci Akins ("Defendant Akins") is an adult resident citizen of Neshoba County, Mississippi, and is sued in her individual capacity. At the time of the events and occurrences described herein, Defendant Akins was a correctional officer at the NCDC, acting within the course and scope of her employment at the NCDC. Defendant Akins refused to provide the Decedent with medical care or reasonable safety measures to protect the Decedent from harm or death. Defendant Akins may be served with process at her place of employment at 401 Beacon Street, Philadelphia, Mississippi 39350, or wherever she may be found.

7.    Defendant Lillian Tucker ("Defendant Tucker") is an adult resident citizen of Neshoba County, Mississippi, and is sued in her individual capacity. At the time of the events and occurrences described herein, Defendant Tucker was a correctional officer at the NCDC, acting

---

[1] On May 1, 2024, the Chancery Court of Newton County, Mississippi ordered that the sole statutory heirs at law and wrongful death beneficiaries of Raymond Lee Murrell are Pamela Murrell, surviving spouse of Raymond Lee Murrell; Raymond Murrell, Jr., surviving son of Raymond Lee Murrell; Shuntel Murrell, surviving daughter of Raymond Lee Murrell; and Rayshad Murrell, surviving son of Raymond Lee Murrell.

within the course and scope of her employment at the NCDC. Defendant Tucker refused to provide the Decedent with medical care or reasonable safety measures to protect the Decedent from harm or death. Defendant Tucker may be served with process at her place of employment at 401 Beacon Street, Philadelphia, Mississippi 39350, or wherever she may be found.

8.      Defendant Rodney Jones ("Defendant Jones") is an adult resident citizen of Neshoba County, Mississippi, and is sued in his individual capacity. At the time of the events and occurrences described herein, Defendant Jones was a correctional officer at the NCDC, acting within the course and scope of his employment at the NCDC. Defendant Jones refused to provide the Decedent with medical care or reasonable safety measures to protect the Decedent from harm or death. Defendant Jones may be served with process at his place of employment at 401 Beacon Street, Philadelphia, Mississippi 39350, or wherever he may be found.

9.      Defendant Arthur Auslander ("Defendant Auslander") is an adult resident citizen of Neshoba County, Mississippi, and is sued in his individual capacity. At the time of the events and occurrences described herein, Defendant Auslander was a correctional officer at the NCDC, acting within the course and scope of his employment at the NCDC. Defendant Auslander refused to provide the Decedent with medical care or reasonable safety measures to protect the Decedent from harm or death. Defendant Auslander may be served with process at his place of employment at 401 Beacon Street, Philadelphia, Mississippi 39350, or wherever he may be found.

10.     Defendant John and Jane Does 1-100 ("Doe Defendants") are sued in their individual capacities. The Plaintiff is ignorant as to the identities of Doe Defendants 1-100, who are unknown NCDC and Neshoba County Sheriff Office supervisors, officers, employees, agents, and or servants. The Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as alleged herein, were proximately caused by their

conduct. The Plaintiff, upon information and belief, asserts that the Doe Defendants were the supervisors, officers, agents, servants, and employees of the Defendants herein, and were acting with the permission and consent within the course and scope of said agency and employment. The Doe Defendants refused to provide the Decedent with medical care or reasonable safety measures to protect the Decedent from harm or death. Doe Defendants 1-100 are adult resident citizens of Mississippi, employed with the Neshoba County Sheriff Office, whose true identities are currently unknown, and can be served with process at 401 Beacon Street, Suite 108, Philadelphia, Mississippi 39350.

## FACTS

11.     On August 21, 2022, Raymond Lee Murrell ("Decedent") died from acute asthma exacerbation while he was a pretrial detainee at the NCDC. The facts show that NCDC employees were not only aware of his serious medical condition (asthma) but acted with deliberate indifference to his serious medical condition, which resulted in his death.

12.     On July 17, 2022, the Decedent was arrested on a bench warrant for failing to appear at the Neshoba County Circuit Court for a prior charge of possession of controlled substance. The Decedent was booked into the NCDC on July 17, 2022, at approximately 5:09 p.m.

13.     The Decedent was housed at the NCDC for a total of thirty-seven (37) days from date of his arrest on July 17, 2022, until his death on August 21, 2022. While at the NCDC, the Decedent experienced *at least* two (2) medical emergencies due to asthma before his death.

14.     The Decedent had a documented diagnosis of asthma, which was known to all named Defendants based upon their own admissions and due to the below stated medical emergencies. The Defendants knew that the Decedent was prescribed breathing treatment for asthma and that the treatment was to be administered every four (4) hours. The Defendants also knew, or should have known, that failure to administer these breathing treatments would result in

death or serious bodily injury.

15.     On July 19, 2022, the Decedent was transported from the NCDC to the Neshoba County General Hospital Emergency Department due to an asthma-related medical crisis. The Decedent was admitted for wheezing, chest pain, and difficulty breathing. The Neshoba County General Hospital noted prior asthma episodes and documented the Decedent's diagnosis as asthma exacerbation. The Decedent was discharged to the NCDC with a prescription for Albuterol 90 mcg/inh aerosol inhaler, to be administered every four (4) hours as needed for wheezing. As shown below, the Defendants deliberately ignored the medical records and did not provide the Decedent with access to follow-up care or adequate medical care or treatment.

16.     On July 29, 2022, the Decedent was transported by ambulance to the Neshoba General Hospital Medical Clinic after falling at the NCDC. The details of the Decedent's fall are currently unknown. Medical records reflected the Decedent's ongoing asthma diagnosis and the Decedent's Albuterol treatment prescription to be available and administered every four (4) hours.

17.     On August 6, 2022, the Decedent was transported from the NCDC on a stretcher to the Neshoba County General Hospital Emergency Department due to a "breathing problem." This was the Decedent's **second** documented asthma-related medical emergency requiring transportation to the hospital. EMS noted that the Decedent's breathing problem persisted for six (6) hours. NCDC staff reported the problem as "lasting all day off and on." The Decedent was treated for acute respiratory distress and discharged, again with asthma documented and a prescription for Ventolin HFA inhalation aerosol to be used every four (4) hours **as needed** for wheezing. Despite the Decedent's second emergency room trip for his asthma condition, the Defendants deliberately ignored the medical records and refused to provide the Decedent with access to follow-up care and adequate, timely medical treatment on the date of his death.

18.     The Defendants' deliberate indifference to the Decedent's safety and well-being

and the Defendants' refusal to provide medical care and reasonable safety to protect the Decedent from harm or death while he was at the NCDC was the direct and proximate cause of the Decedent's death.

19.     The Plaintiff is currently unaware of whether Neshoba County or Sheriff Eric Clark took any corrective action to address the Defendants' blatant disregard for the Decedent's constitutional and civil rights, including access to adequate and timely medical care or whether Clark properly trained and supervised the Defendants. The Plaintiff will amend this Complaint to name all other parties when appropriate.

## **DEFENDANT STACI AKINS**

20.     On August 21, 2022, at approximately 4:00 p.m., Defendant Staci Akins arrived at the NCDC for her shift earlier than scheduled due to the NCDC being "shorthanded." At approximately 6:00 p.m., Defendant Atkins went to the Control Tower, where she remained for the duration of her shift.

21.     Defendant Akins' duties in the Control Tower included monitoring video footage and alerting officers to unusual occurrences. Defendant Akins had a "full view" of the Detox 1 Cell with the exception of the toilet and cell door from the Control Tower. Defendant Akins had a clear view of the Decedent throughout his agonizing death.

22.     Defendant Akins was admittedly aware of the Decedent's asthma diagnosis which required treatment. According to her statement, Defendant Akins knew that the Decedent previously went to the hospital due to an asthma-related crisis while he was incarcerated at the NCDC.

23.     The Decedent displayed unusual behaviors exhibiting an asthma-related medical crisis from approximately 7:57 p.m. until he was found unresponsive at approximately 10:51 p.m. The Decedent continually fanned himself, splashed water on himself, struggled to breathe, and

begged for medical treatment in plain view of the surveillance camera for approximately three (3) hours.

24.     Acting with deliberate indifference to the safety and well-being of the Decedent, Defendant Akins ignored the Decedent's crisis and failed to alert staff to the Decedent's need for medical treatment for three (3) hours. Defendant Akins delayed the Decedent's access to adequate and timely medical care by deliberately ignoring the Decedent's crisis and deliberately failing to alert NCDC staff to the Decedent's behaviors observed from the Control Tower. Defendant Akins refused to provide any medical assistance to the Decedent and refused to protect the Decedent from harm or death.

## DEFENDANT LILLIAN TUCKER

25.     On August 21, 2022, at approximately 6:00 p.m., Defendant Lillian Tucker arrived at the NCDC for her shift. Defendant Tucker was aware of the Decedent's medical condition and that he required breathing treatment every four (4) hours. Defendant Tucker admittedly assisted with the Decedent's breathing treatments prior to August 21, 2022.

26.     According to Defendant Tucker's statement, at approximately 9:30 - 10:00 p.m., Defendant Tucker and Defendant Akins were in the Control Tower talking when Defendant Tucker observed the Decedent fanning himself from the surveillance cameras.

27.     Acting with deliberate indifference to the safety and well-being of the Decedent, Defendant Tucker ignored the Decedent's crisis, refused to provide any medical assistance to the Decedent, failed to alert other officers of the Decedent's behaviors exhibiting a medical crisis, and refused to protect the Decedent from harm or death. Defendant Tucker delayed the Decedent's access to adequate and timely medical care by deliberately ignoring the Decedent's crisis and deliberately failing to alert NCDC staff to the Decedent's behaviors observed from the Control Tower.

## DEFENDANT RODNEY JONES

28.    On August 21, 2022, at approximately 5:30 p.m., Defendant Rodney Jones, the night shift supervisor, arrived at the NCDC for his shift. According to Defendant Jones' statement, upon his arrival at the NCDC at approximately 5:30 p.m., he observed the Decedent receiving breathing treatment by the day shift in the nurse's station. However, ***there are no jail records reflecting that the Decedent received breathing treatment at this time.***

29.    Defendant Jones was admittedly aware of the Decedent's history of asthma and knew that the Decedent received breathing treatments "every day," every four (4) hours. According to his own statement, Defendant Jones was aware that the Decedent had several inhalers during his thirty-seven (37) days at the NCDC.

30.    According to video footage and Defendant Jones' statement, Defendant Jones placed the Decedent in Detox 1 at *exactly* 5:30 p.m. for observation. According to video footage and witness statements from Defendant Jones and detainees Ronald Jenkins and Lee Shoemake who were housed in the Detox 1 Cell, the Decedent immediately complained that he was hot upon entering the Detox 1 Cell, to which Defendant Jones responded that he did not control the air.

31.    According to video footage, at 8:04 p.m., Defendant Jones opened the Detox 1 Cell door, spoke aggressively to the Decedent while waving his hands and pointing at the Decedent. According to video footage and witness statements from Ronald Jenkins and Rodney Copeland who were housed in the Detox 1 Cell, the Decedent responded to Defendant Jones by pointing to his chest and pleading for medical attention.

32.    With deliberate indifference to the safety and well-being of the Decedent, Defendant Jones ignored the Decedent's pleas for medical attention, refused to provide the Decedent with medical treatment, delayed access to timely and adequate medical care, and failed to protect the Decedent from harm and ultimately death.

## DEFENDANT ARTHUR AUSLANDER

33.    On August 21, 2022, at approximately 6:00 p.m., Defendant Arthur Auslander arrived at the NCDC for his shift. According to Defendant Auslander's statement, upon his arrival at the NCDC at approximately 6:00 p.m., he observed the Decedent in the nurse's office receiving breathing treatment. *Again, there are no records confirming this and conflicts with video footage of when the Decedent was placed in the cell.* According to video footage, the Decedent was placed in the Detox 1 Cell at exactly 5:30 p.m., and did not leave the Detox 1 Cell until he was unresponsive at approximately 10:51 p.m.

34.    According to Defendant Jones and Defendant Auslander's unsubstantiated statements, the Decedent received breathing treatment before being placed in the Detox 1 Cell. According to video footage, the Decedent was placed in the Detox 1 Cell at exactly 5:30 p.m. According to doctor's orders, of which all Defendants were aware, the Decedent's regularly scheduled breathing treatment was due by 9:30 p.m. at the latest, even though the Decedent was in apparent distress prior to 9:30 p.m. The Defendants acted with deliberate indifference to the Decedent's serious medical needs and did not administer his breathing treatment.

35.    Defendant Auslander was admittedly involved with at least one prior medical emergency when the Decedent did not respond for his breathing treatment and was transported to the hospital by ambulance. Currently, it is unknown whether Defendant Auslander was involved in the July 19, 2022 incident or the August 6, 2022 incident, or both. Still, Defendant Auslander acted with deliberate indifference to the Decedent's need for medical treatment and failed to protect the Decedent from harm and death.

36.    According to video footage, the window to the Detox 1 Cell was covered by a piece of paper that had to be moved for officers to observe the detainees in the cell. At 8:46 p.m., Defendant Auslander observed the detainees in Detox 1 Cell through a window on the cell door

*for the first time* since he arrived at the NCDC nearly three (3) hours prior. According to video footage, at this time, Defendant Auslander falsified the Detox 1 Cell "check log," stating that he observed and checked the detainees at 7:00 p.m., 8:00 p.m., and 9:00 p.m.

37.     According to witness statements from Ronald Jenkins, Keislan Greer, Lee Shoemake, and Rodney Copeland, all detainees housed in the Detox 1 Cell, the Decedent repeatedly stated that he could not breathe and pled for medical attention from 7:57 p.m. until he was found unresponsive at approximately 10:51 p.m. According to video footage and witness statements from Ronald Jenkins, Keislan Greer, Lee Shoemake, and Rodney Copeland, at 10:12 p.m., the Decedent beat on the Detox 1 Cell door pleading for medical treatment. According to video footage, Defendant Auslander aggressively spoke to the Decedent and slammed the cell door as the Decedent begged for help at the door. Defendant Auslander refused to provide the Decedent with life-saving medical treatment and failed to protect the Decedent from harm or death.

38.     According to Defendant Auslander's statement, the Decedent banged on the Detox 1 Cell door while Keislan Greer was being booked in the NCDC at approximately 10:00 p.m. According to Defendant Jones, the policy on letting inmates out while another was booking in was to "make them wait." According to video footage, at 10:28 p.m., Defendant Auslander placed Inmate Keislan Greer in the Detox 1 Cell. When Defendant Auslander opened the cell door, he pointed towards the nurse's station. Yet, the Decedent still received no medical attention.

39.     Acting with deliberate indifference to the safety and well-being of the Decedent, Defendant Auslander failed to medically observe the Decedent as required, ignored the Decedent's pleas for medical attention, refused to provide medical attention to the Decedent, failed to protect the Decedent from harm and ultimately death, and falsified the Detox "check log," stating that he observed the detainees in Detox 1 Cell at 7:00 p.m., 8:00 p.m., and 9:00 p.m.

40.     The Defendants blatantly ignored the Decedent's obvious signs of an asthma-

related medical crisis and his requests for medical attention for approximately three (3) hours. The Defendants made no effort to conduct medical observations in accordance with appropriate standards. The Defendants deliberately refused to provide the Decedent with adequate and timely medical care or reasonable safety measures to protect him from harm or death. The Defendants' denial and delay in medical care and treatment resulted in the Decedent's death.

41.     The Defendants had ample opportunities to observe the Decedent pleading for medical treatment and exhibiting behaviors consistent with an asthma-related, life-threatening medical emergency. The Decedent's pleas for medical help were refused, ignored, and delayed, causing the Decedent's death.

42.     The Defendants, as well as detainees housed in the Detox 1 Cell with the Decedent[2], knew the Decedent was placed in Detox 1 Cell for the *specific purpose* of receiving breathing treatment and observation. The nurse's station, breathing machine, and asthma pump were all in near proximity to Detox 1.

43.     On August 21, 2022, at 7:57, in plain view of surveillance cameras in the Detox 1 Cell, the Decedent was noticeably struggling to breathe, coughing, agitated, drinking water, and pleading for help. The Defendants ignored the Decedent's behaviors and did not provide medical care or assistance to the Decedent as he exhibited behaviors consistent with an asthma-related medical crisis for approximately three (3) excruciating hours.

44.     According to video footage and witness statements from Ronald Jenkins, Keislan Greer, Lee Shoemake, and Rodney Copeland, at approximately 10:00 p.m., the Decedent banged on the door of Detox 1 begging for medical treatment. At 10:13 p.m., the Decedent's condition

---

[2] Ronald Jenkins, Keislan Greer, Lee Shoemake, and Rodney Copeland were detainees at the Neshoba County Detention Center housed in the Detox 1 Cell with Raymond Murrell on the night of August 21, 2022. Ronald Jenkins, Keislan Greer, Lee Shoemake, and Rodney Copeland provided statements to Jerome Moore with Mississippi Bureau of Investigation after the fact.

was critical. The Decedent flailed on the cell floor while beating on the door and pleading for medical attention. According to video footage, at 10:18 p.m., Defendant Jones opened the Detox 1 Cell door and spoke to another inmate, yet he made no effort to provide the Decedent with medical attention as he exhibited behavior consistent with an asthma medical emergency and pleaded for medical care.

45.     Defendants Auslander and Jones authorized Joseph Fuquay, the nighttime trustee, to enter the Detox 1 Cell multiple times as the Decedent exhibited life-threatening behavior yet refused to provide any medical attention to the Decedent and failed to protect the Decedent from harm or death. According to video footage, at 10:31 p.m., Fuquay entered the Detox 1 Cell with a trash bag. At 10:32 p.m., all detainees in the Detox 1 Cell were awake and visibly concerned about the Decedent, who was lying on his right side with his eyes wide open, not blinking. At 10:33 p.m., Fuquay entered the Detox 1 Cell with a mop and Defendant Jones approached Detox 1 Cell, but with deliberate indifference to the risk of harm or death to the Decedent, Defendant Jones returned to his seat at the Booking desk.

46.     According to video footage, Fuquay entered the Detox 1 Cell again wearing white gloves. Fuquay observed the Decedent lying unresponsive, hit the Decedent's hand, checked the Decedent's pulse on his neck, pushed the Decedent's chest, and looked back at the cell door and spoke to an unidentified person. Fuquay tapped the Decedent again with no response, then exited the camera's view at 10:54 p.m.

47.     Only *after* the Decedent was unresponsive, Defendant Jones directed Defendant Auslander to obtain a wheelchair for the Decedent to administer his breathing treatment. At approximately 10:48 p.m., Defendant Auslander contacted Defendant Tucker to assist with the Decedent's breathing treatment. At 10:51 p.m., Defendant Tucker arrived at Detox 1 from the Control Tower. Defendant Tucker "saw how [the Decedent] was positioned" and retrieved the O2

monitor from the nurse's station. Defendant Tucker informed Defendant Jones that the Decedent's O2 yielded no results, the Decedent had no pulse, and the Decedent was cold to the touch. Defendant Jones called communications for an ambulance at approximately 11:00 p.m. According to video footage, the Decedent lied unresponsive with no medical attention until paramedics arrived at 11:07 p.m.

48.    The Decedent's death was a direct result of the Defendants' deliberate indifference to the safety and well-being of inmates in the care and custody of the NCDC, specifically Raymond Lee Murrell. The Defendants ignored the Decedent's behaviors and pleas for medical treatment for three (3) hours. The Defendants failed to medically observe the Decedent who was placed in the Detox 1 Cell for the specific purpose of observation. The Defendants denied and delayed the Decedent's medical treatment. As a result of the Defendants' deliberate indifference, the Decedent died from acute asthma exacerbation.

## § 1983 CAUSE OF ACTION: EPISODIC ACTS OR OMISSIONS
## DENIAL OF MEDICAL CARE

49.    Plaintiff incorporates all allegations set forth in Paragraphs 1 through 48 hereinabove.

50.    The Defendants acted with deliberate indifference in the allegations listed above. The Defendants failed to properly treat and manage the Decedent's serious health condition. The Defendants denied and delayed the Decedent's access to life-saving medical treatment and thereby directly caused the Decedent's death. In doing so, the Defendants violated clearly established constitutional rights, including but not limited to:

    a)    Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

    b)    Decedent's right not to be deprived of liberty without due process of law;

    c)    Decedent's right to be safe and protected from injury while in custody; and

d)    Decedent's right to necessary medical treatment for his very serious medical
~~condition.~~

51.    The Defendants' actions deprived the Decedent of the rights secured for him by the

United States Constitution under the Eighth and Fourteenth Amendments and federal law by their

refusal to provide the Decedent with documented medically necessary medication and care

required to sustain his life. As a direct and foreseeable result of Defendants' actions, the Decedent

suffered immensely until his death.

52.    It is well-settled that "the Eighth Amendment prohibition against cruel and unusual

punishment forbids deliberate indifference to the serious medical needs of prisoners."[3] A "serious

medical need" is one "for which treatment has been recommended or for which the need is so

apparent that even laymen would recognize that care is required."[45] The Decedent's asthma

diagnosis was a "serious medical need" in which treatment had been recommended and prescribed.

The Decedent's need for medical treatment was apparent if not before, then certainly after, the

Decedent's first asthma-related medical crisis resulting in hospitalization on July 19, 2022. The

Defendants were deliberately indifferent to the serious medical needs of the Decedent by

intentionally denying and delaying access to medical care and intentionally interfering with the

treatment prescribed to the Decedent.

53.    The Defendants exhibited deliberate indifference to the Decedent's serious medical

need by delaying and denying the Decedent's access to medical care, with the awareness of and

disregard for an excessive risk to the health and safety of the Decedent. The Decedent was

objectively exposed to a substantial risk of serious harm when he suffered his excruciating death

---

[3] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).
[4] *Lewis v. Evans*, 440 F. App'x 263, 264 (5th Cir. 2011) (per curiam).
[5] "The Eighth Amendment is violated when prison guards are deliberately indifferent to the serious medical needs of prisoners." *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating that prison guards are deliberately indifferent when they "intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed.)

in the Detox 1 Cell at the NCDC. The Defendants were aware of the risk of serious harm to the Decedent and acted with deliberate indifference to the risk of serious harm.[6]

54.     The Defendants' requisite subjective knowledge of a substantial risk may be demonstrated in usual ways, including inferences from circumstantial evidence.[7][8] "A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."[9] The Defendants acted with deliberate indifference despite their knowledge of a substantial risk of serious harm. While the risk of harm was obvious, other evidence proves that the Defendants knew the Decedent was exposed to a substantial risk of serious harm:

a)     Defendants' knowledge of the Decedent's asthma diagnosis;

b)     Defendants' knowledge of the Decedent's breathing treatment prescribed every four (4) hours as needed for wheezing;

c)     Defendants' knowledge that the Decedent had several inhalers while at the NCDC;

d)     Defendants' knowledge of or involvement in prior incident(s) in which the Decedent was taken to the Neshoba General Hospital due to asthma related medical crises on July 19, 2022, and August 6, 2022; and

e)     Defendants' knowledge that the Decedent was not only exposed to, but was also experiencing, serious harm in the Detox 1 Cell.

Still with this knowledge, the Defendants responded with deliberate indifference and denied and delayed the Decedent's access to life-saving medical care.

55.     The Defendants refused to treat the Decedent, ignored his complaints, and engaged in similar conduct that clearly evinces a wanton disregard for the Decedent's serious medical needs.[10] The Defendants' continuous denial and delay in providing medical care to the Decedent

---

[6] *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).
[7] See *McCoy v. Texas Dep't of Crim. Justice*, C.A. No. C-05-370 (S.D. Tex. Jun. 26, 2006), p.8
[8] *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).
[9] *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *United States v. Gonzales*, 436 F.3d 560, 573-74 (5th Cir. 2006).
[10] *Lewis v. Evans*, 440 F. App'x 263, 264 (5th Cir. 2011) (per curiam).

was an unnecessary and wanton infliction of pain repugnant to the conscience of mankind.[11] The Decedent pleaded for medical care for approximately three (3) hours to no avail. The Decedent's death was not an unforeseeable accident. The Defendants committed a series of acts and omissions which resulted in death. The Defendants did not inadvertently fail to provide adequate medical care; rather, the Defendants deliberately denied and delayed medical care for hours as the Decedent suffered until his death.

56.    The Defendants' denial and delay in providing the Decedent with medical care was objectively unreasonable in light of the clearly established law at the time of the incident.[12] A violation of clearly established law occurs when "it is sufficiently clear that a reasonable official would understand that what he or she is doing violates that right."[13] "The law can be clearly established despite factual distinctions between precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[14] The Defendants acted objectively unreasonable in light of clearly established law at the time of the incident.[15] The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners and it is well-settled that an officer who mocks and *refuses to treat a prisoner in obvious need of help* violates the Eighth Amendment.[16] The Defendants had "fair warning" and notice that the conduct alleged herein violated the Decedent's rights. No reasonable officer could find the Defendants'

---

[11] *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1977).

[12] *Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 490 (5th Cir. 2005).

[13] *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006).

[14] *Hope v. Pelzer*, 536 U.S. 730 (2002); *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006).

[15] See *Stewart v. Guzman*, No. 13-10139 (5th Cir. 2014) (summary judgment improper because genuine issues of material fact existed as to whether prison officers were deliberately indifferent to prisoner's health and safety by repeatedly delaying providing prisoner with medical treatment, even though they were aware that he frequently suffered from asthma attacks) (reversing grant of summary judgment, as evidence showed officials knew inmate was prone to asthma attacks and had a treatment plan, but nevertheless watched inmate lay on the floor).

[16] *Farmer*, 511 U.S. at 837-39; *Fielder*, 590 F.2d at 108.

actions or inactions to be consistent with the Decedent's right to adequate medical care. The Defendants' deliberate indifference to the Decedent's serious medical need and delay in providing medical care resulted in substantial harm.

57.     The Defendants were aware of the Decedent's asthma diagnosis, his need for medical treatment, and treatment schedule, but refused to provide the Decedent with life-saving medical treatment. The Defendants repeatedly delayed providing the Decedent with medical treatment, although they were aware that he suffered from a serious medical condition. The Decedent visibly struggled to breathe and pleaded for medical attention. The Defendants refused to provide the Decedent with medical care or treatment. The Defendants made no attempt to treat or provide medical care for the Decedent until he was unconscious. The Defendants did not make any earnest attempt to care for the Decedent. Rather, the Decedent was met with a casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help.[17] The Defendants' actions and inactions were done with deliberate indifference to the Decedent's health and safety and directly and proximately caused the Decedent's untimely death.

58.     The Decedent allegedly received his last breathing treatment before being placed in Detox 1; the exact time of his last breathing treatment is currently unknown, but it was *before* 5:30 p.m. According to video footage, the Decedent was placed in the Detox 1 Cell by Defendant Jones at exactly 5:30 p.m. The Defendants were aware that the Decedent's breathing treatments were every four (4) hours. The Decedent's following treatment was to be *no later than 9:30 p.m.* However, the jail records fail to reflect the time of the Decedent's last breathing treatment, or whether it was administered at all.

---

[17] *Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979).

59.    Defendants Akins and Tucker were in the Control Tower where they had full view of the Detox 1 Cell to observe the Decedent's behaviors exhibiting a medical crisis. Defendants Akins and Tucker ignored the Decedent's behaviors and deliberately failed to notify any officers or employees as to the Decedent's serious medical condition and serious medical need. Defendants Akins and Tucker refused to provide the Decedent with medical care, and refused, delayed, and denied life-saving medical treatment to the Decedent. Defendant Akins observed the Decedent's unusual behaviors of fanning himself and struggling to breathe. Defendant Akins callously admitted, "I didn't see anything unusual *for him*. He's been taken out before for breathing treatment and saying he can't breathe." (emphasis supplied).

60.    Defendants Auslander and Jones were in the Booking area at all times relevant to this Complaint. According to video footage and witness statements from Ronald Jenkins, Keislan Greer, Lee Shoemake, and Rodney Copeland, Defendants Auslander and Jones blatantly ignored the Decedent's pleas for help, responded with callous remarks such as, "shut up," and blamed the Decedent for his inability to breathe. When the Decedent was unresponsive, Defendants Auslander and Jones called Trustee Fuquay and Defendant Tucker to assist with breathing treatment.

61.    The Defendants' refusal to take any action for over three (3) hours until the Decedent was unresponsive, despite the presence of numerous officers in Booking and the Control Tower, while mocking and blaming the Decedent for his inability to breathe, constitutes a "cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help."[18]

---

[18] *Fielder*, 590 F.2d at 108.

## PUNITIVE DAMAGES

62.    The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 61 hereinabove.

63.    Defendants and Doe Defendants 1-100, in their individual capacities, acted in complete disregard for the safety of the Decedent by acting in a negligent and/or grossly negligent manner as previously described herein. The actions of these Defendants warrant punitive damages.

64.    The Defendants' actions in their individual capacities exhibited gross negligence and direct disregard for the safety of the Decedent. Punitive damages should be awarded against the Defendants. Defendants' tortious actions caused the wrongful death of the Decedent, and therefore, Plaintiff's emotional distress and mental anguish.

65.    From Defendants Akins, Tucker, Jones, and Auslander, jointly and severally, Plaintiff seeks recovery of all compensatory damages to which the Estate of Raymond Lee Murrell is entitled. From the Defendants in their individual capacities, Plaintiff further seeks recovery of punitive damages to which the Estate of Raymond Lee Murrell is entitled to for the Defendants' conduct in callous and reckless disregard for the rights, welfare, and medical needs of the Decedent.

## **PRAYER FOR RELIEF**

The Plaintiff, Pamela Murrell, requests that upon a jury trial of this cause, the Court will award all relief due to the Estate of Raymond Lee Murrell as set forth herein, including but not limited to the following:

a)    Order that the Defendants pay to the Estate of Raymond Lee Murrell all damages allowed under Mississippi's Wrongful Death and Survival statutes and caselaw;

b)    Order that the Defendants pay to the Estate of Raymond Lee Murrell a sum in punitive damages sufficient to deter these Defendants and others similarly situated from like conduct in the future;

c)      Payment of medical and burial expenses;

d)      Order the Defendants to pay the Estate of Raymond Lee Murrell's costs and expenses, including expert witness fees and reasonable attorney's fees, and prejudgment interest on all amounts found due and owing, including, but not limited to, those attorney's fees found properly awardable pursuant to 42 U.S.C. § 1988(b); and

e).     Grant such other general and special relief, of either an equitable or legal nature, to the Estate of Raymond Lee Murrell as the Court deems just and proper.

RESPECTFULLY SUBMITTED, THIS the 29th day of May, 2024.

PAMELA MURRELL

BY:

COURTNEY D. SANDERS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
MERRIDA (BUDDY) COXWELL (MB# 7782)
COURTNEY D. SANDERS (MB# 106444)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi  39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
chuckm@coxwelllaw.com
merridac@coxwelllaw.com
courtneys@coxwelllaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

This is to certify that I, Courtney D. Sanders, have on this day filed the above and foregoing

*Plaintiff's Original Complaint* with the Clerk of the Court via the ECF system, which sent notice

of same to all counsel of record.

This the 29th day of May, 2024.

BY: _____

COURTNEY D. SANDERS